**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| WHITNEY NATIONAL BANK, | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-04-2220 |
| | § | |
| | § | |
| AIR AMBULANCE BY B&C FLIGHT | § | |
| MANAGEMENT INC. *et al.* | § | |

**MEMORANDUM AND ORDER**

Plaintiff Whitney National Bank has filed a motion to enforce a contractual jury waiver against defendant Roy Horridge.  (Docket Entry No. 113).   Horridge has responded.  (Docket Entry No. 120).  A recently added defendant, Horridge's former wife, Jillie Jacorro, supports Horridge's opposition and argues that even if the contractual waiver is enforceable as to Horridge, it is not enforceable as to her.  (Docket Entry No. 119).  Whitney has replied.  (Docket Entry No. 121).  Whitney clarifies that it is not seeking to enforce the waiver as to Jacorro and emphasizes that the claim against Jacarro are distinct from those against Horridge.

The  motion to enforce the jury trial waiver and the responses identify two questions.  The first is whether Horridge signed the contractual waiver in his individual capacity or only as an officer of the corporate entities on whose behalf he signed.  The second issue is whether Whitney waived any right to enforce the waiver because of the delay in seeking enforcement.

Based on a careful review of the pleadings, the motion, response, and reply, the parties' submissions, and the applicable law, this court grants Whitney Bank's motion to enforce the waiver against Horridge individually as well as against the corporate parties. The reasons are set out below.

## I.      Background

In 2004, Whitney National Bank sued its borrower, Air Ambulance by B & C Flight Management, Inc.; the pledgor on the loan, B & C Flight Management, Inc., and the guarantors on the loan, B & C Flight Management and its president, Roy G. Horridge, alleging breach of contract, fraud, and conversion.  Beginning in 2002, Whitney made several loans to Air Ambulance by B & C Flight Management, Inc. for the purchase of aircraft for air ambulance operations.  In 2004, Horridge sought and obtained another $1 million loan from Whitney.  On May 7, 2004, the parties executed the following documents:

- The First Amended and Restated Commercial Business Loan Agreement ("Loan Agreement"), signed by Roy Horridge individually as a guarantor and by Roy Horridge as president on behalf of a second guarantor, Air Ambulance by B & C Flight Management, Inc. and by Roy Horridge for as president Air Ambulance by B & C Flight Management, Inc. on behalf of the Borrower (Docket Entry No. 1, Ex. 4).

- The Commercial Note, signed by Roy Horridge as president on behalf of the borrower, Air Ambulance by B & C Flight Management, Inc.  (Docket Entry No. 1, Ex. 3).

- The Ratification of Previously Executed Aircraft Security Agreements, signed by Roy Horridge as president on behalf of the pledgor, Air Ambulance by B & C Flight Management, Inc. (Docket Entry No. 1, Ex. 4).

- The (Restated) Continuing Guaranty ("Guaranty"), signed by Roy Horridge individually as a guarantor and by Roy Horridge as president on behalf of a second guarantor, Air Ambulance by B & C Flight Management, Inc. (Docket Entry No.. 1, Ex. 5).

- The Waiver of Right to Trial by Jury ("Waiver"), signed by  Roy Horridge as president on behalf of the borrower, Air Ambulance by B & C Flight Management, Inc.; Roy Horridge, president, as a Guarantor; Roy Horridge, president, on behalf of the second guarantor, B & C Flight Management, Inc.; and Roy Horridge, president, on behalf of the pledgor, B & C Flight Management, Inc. (Docket Entry No. 113, Ex. A).

Whitney declared the loan in default and accelerated the Note, then filed this lawsuit. In the complaint, Whitney alleges that the defendants breached their obligations under the Note, the Aircraft Security Agreements, the Loan Agreement, and the Guaranty, and committed fraud in obtaining the Loan.

The parties dispute the capacities in which Horridge signed the Waiver of Right to Trial by Jury.  The Waiver is a separate document.  It defines the "Lender" as Whitney National Bank and the "Borrower" as Air Ambulance by B & C International, Inc. (Docket Entry No. 113, Ex. A at 1).  The Waiver states, "[t]o the extent that there are any Guarantors

3

(herein "Guarantors") or any Pledgors (herein "Pledgors") signing this document in the space

provided below, they too agree to be bound by the provisions of this Agreement." (*Id.*).  The

record makes it clear that the "Pledgor" is B & C Flight Management, Inc. and that there are

two "Guarantors": Roy G. Horridge, individually and B & C Flight Management, Inc.

The Waiver contained the following language:

> This Agreement is bring entered into between the parties set forth below and it is in conjunction with an extension of credit being made by WHITNEY NATION BANK (herein the "Lender").  It is in conjunction with the loan (herein the "Loan") in the amount of FIVE MILLION SIX HUNDRED EIGHTY-FIVE HUNDRED NINETY-SEVEN AND NO/100 DOLLARS ($5,685,597.00) made on this date by Lender to AIR AMBULANCE BY B & C FLIGHT MANAGEMENT, INC., a Nevada corporation (fka MEDICAL EXPRESS INTERNATIONAL, INC.) (herein the "Borrower").  To the extent that there are any Guarantors (herein "Guarantors") or any Pledgors (herein "Pledgors") signing this document in the space provided below, they too agree to be bound by the provisions of this Agreement.  Each of the parties hereto acknowledges that the entry by it into this Agreement is a material inducement to the Lender in making the Loan.
>
> **TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, BORROWER, AND ANY OTHER PARTY JOINING HEREIN HEREBY IRREVOCABLY AND EXPRESSLY WAIVES ALL RIGHT TO A TRIAL BY JURY IN AN ACTION, PROCEEDING, OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT TORT, OR OTHERWISE) ARISING OUT OF OR RELATING TO THE EXTENSION OF CREDIT DESCRIBED ABOVE, OR ANY DOCUMENT EXECUTED IN CONNECTION THEREWITH OR THE TRANSACTIONS CONTEMPLATED THEREBY OR THE ACTIONS OF THE LENDER IN THE NEGATION, ADMINISTRATION, OR ENFORCEMENT OF ANY OF THE FOREGOING.**

As noted, Horridge signed this Waiver in four places:

BORROWER:

AIR AMBULANCE BY B&C FLIGHT
MANAGEMENT, INC., a Nevada corporation (fka
MEDICAL EXPRESS INTERNATIONAL, INC.)

By:  ___/s/_____
      Roy G. Horridge
      President


GUARANTOR:

_____/s/_____
Roy G. Horridge, President

B & C FLIGHT MANAGEMENT, INC.,
a Nevada Corporation

By:   _/s/_____
      Roy G. Horridge
      President


PLEDGOR:

B&C FLIGHT MANAGEMENT, INC.,
a Nevada corporation

By:   __/s/_____
      Roy G. Horridge
      President


(*Id*. at 1).  There was one signature space for the lender:

LENDER:

WHITNEY NATIONAL BANK,

5

a national banking association

By: ___/s/_____
         Robert Ramey
         Bank Officer.

(*Id.* at 2).

The Loan Agreement was signed on the same date as the Waiver.  Horridge signed

the Loan Agreement once for the borrower, once as a guarantor, and once for a corporate

guarantor:

**BORROWER**:

AIR AMBULANCE BY B & C FLIGHT MANAGEMENT, INC.,
a Nevada corporation (fka Medical Express International,
Inc., a Nevada corporation

By: ____/s/____
         Roy G. Horridge
         President

**GUARANTOR**:

_____/s/_____
ROY G. HORRIDGE

**GUARANTOR**:
B & C FLIGHT MGMT, INC.,

____/s/_____
Name:        Roy G. Horridge
Title:        President

6

The Guaranty was also signed on the same date as the Waiver.  Horridge signed the Guaranty twice, once for himself as one guarantor, and once for B & C Flight Management as a second guarantor:

GUARANTOR:

\_\_\_\_\_/s/_____
ROY G. HORRIDGE

GUARANTOR:

B & C FLIGHT MGMT, INC.,

\_\_\_\_/s/_____
Name:        Roy G. Horridge
Title:        President

(Docket Entry No. 1, Ex. 5).

Whitney asserts that Horridge signed the Waiver twice as a guarantor because he signed in both his individual and representative capacities.  Horridge argues that he did not sign any of the four spaces on the Waiver in his individual capacity but only in his representative capacity as president of the corporate entities.

Horridge also argues that Whitney waived the right to enforce the Waiver by waiting too long to do so. Both arguments are addressed below.

## II.    The Applicable Legal Standards

The right to a jury trial in federal court is a question of federal law.  *RDO Financial Serv's Co. v. Powell*, 191 F. Supp.2d 811, 813 at n.5 (N.D. Tex. 2002) (collecting cases). Although the right of trial by jury in civil actions is protected by the Seventh Amendment to

7

the Constitution, that right can be waived by the parties' prior written agreement. *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833 (1986). Agreements waiving the right to jury trial are neither illegal nor contrary to public policy. *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.*, 56 F. Supp.2d 694, 706 (E.D. La. 1999) (citing *McCarthy v. Wynne*, 126 F.2d 620, 623 (10th Cir.), *cert. denied*, 317 U.S. 640 (1942)). A jury trial waiver must be made knowingly and voluntarily, and courts will indulge every reasonable presumption against finding a waiver. *RDO Financial*, 191 F.Supp.2d at 813 (citing *Commodity Futures*, 478 U.S. at 848). Although the Fifth Circuit has not addressed the issue, most federal courts have held that the party seeking to enforce a jury trial waiver has the burden of showing that it was made knowingly, voluntarily, and intelligently. *Id.* at 813, n.9 (collecting cases). The factors used by federal courts to decide whether a waiver was made knowingly, voluntarily, and intelligently include: (1) whether there was gross disparity in bargaining power between the parties; (2) the business or professional experience of the party opposing the waiver; (3) whether the opposing party had an opportunity to negotiate contract terms; and (4) whether the clause containing the waiver was inconspicuous. *Id.* at 813–14.

## III.    Analysis

### A.    Did Horridge Sign the Waiver in his Individual as well as his Representative Capacity?

Horridge argues that he did not sign the Waiver as an individual but only as president of B & C Flight Management, Inc. (Docket Entry No. 120 at 2). The parties agree that

8

whether he signed in an individual or representative capacity is a matter of Texas law. (Docket Entry No. 120 at 2; Docket Entry No. 121 at 3).  This court recently analyzed this Texas law issue in *Wood v. PennTex Resources L.P.*, 2006 WL 3030680 (S.D. Tex. Oct. 23, 2006).

Under Texas law, an agent who signs a contract for a disclosed principal is generally not liable for the obligations imposed under that contract.  Texas law recognizes that "parties to a contract may alter this general rule so that the agent *will* be liable on the contract." *Instone Travel Tech. Marine & Offshore v. Int'l Shipping Partners*, 334 F.3d 423, 428 (5th Cir 2003) (emphasis in original); *Am. Petrofina v. Bryan*, 519 S.W.2d 484 (Tex. App. – El Paso 1975, no writ).  "The fact that a person is under an agency relation to another which is disclosed does not prevent him from becoming personally liable where the terms of the contract clearly establish personal obligation."  *Am. Petrofina*, 519 S.W.2d at 487.

In *American Petrofina*, an agreement guaranteeing a corporate debt was signed by two brothers who designated their corporate capacities after their signatures.  The court held the obligations after the signatures to be *descriptio personae. Id.* at 487.  Texas law defines "*descriptio personae*" as the use of a word or phrase to identify or point out the person intended, not to indicate that the person is signing only in the "technical character" that might appear indicated by that word or phrase.  *Neeley v. Intercity Mgmt. Corp.*, 623 S.W.2d 942, 948 (Tex. App.— Houston 1981, no writ).  According to the *American Petrofina* court, there was no ambiguity in the guaranty agreement, which clearly set forth the obligations the brothers undertook as individuals.  The court emphasized that the guaranty was a collateral

undertaking to secure the debt of the corporation.  If the court were to hold that the undertaking did not impose obligations on the brothers individually, the guaranty would become meaningless.  The court cited the basic contract law principle that the entire document must be interpreted to give effect to every provision.  *Id*.  The court concluded that reading the contract to give effect to all its terms and recognizing that under Texas law, "designations after the signatures do not destroy the effect of the undertaking and defeat the terms," the brothers themselves were parties to the contract, notwithstanding their signatures in their corporate capacities.  *Id*. at 487.  Similarly, in *Dann v. Team Bank*, 788 S.W.2d 182 (Tex. App.–Dallas 1990, no writ), a corporation, Cetcon, signed a deed of trust, and the plaintiff signed a guaranty in her corporate capacity as president of Cetcon.  The designation of her corporate capacity was found to be *descriptio personae*, because to hold that the guarantor could only be liable in a representative capacity would make the guaranty meaningless.  "To treat Cetcon as the guarantor as well as the borrower would negate the purpose of the guaranty," while holding that the guarantor signed in her individual capacity gave the guaranty its intended effect.  *Id*. at 184–85 (citing *Am. Petrofina*, 519 S.W.2d at 487).

The courts have rejected the application of *descriptio personae* when it would impose corporate obligations on an individual who signed only in a corporate capacity, as opposed to enforcing obligations that the individual agreed to assume in addition to, or in place of, corporate obligations.  In *Block v. Aube,* 718 S.W.2d 914 (Tex. App.–Beaumont 1986, no writ), the court considered an employment contract between a corporation and an individual.

10

The issue was whether the individual who signed the contract on behalf of the corporation as the "owner" and "president" of the corporation had individually guaranteed the employment agreement.  The *Block* court held that there was no personal obligation on the part of the signatory-owner, emphasizing that the only obligations imposed in the contract were corporate, not individual, obligations.  *Id*. at 915.

Under Texas law, a corporate designation does not relieve an individual signatory of liability if the contract imposes such personal liability:

> [T]here is no clear mode of signature that will absolutely fix or avoid personal liability. A signature followed by corporate office will result in personal liability where the individual is clearly designated within the instrument as personal surety for the principal. In such case, the corporate office may be construed a descriptio personae of the signator rather than indication of the capacity in which he signs.

*Material P'ships., Inc. v. Ventura*, 102 S.W.3d 252, 259 (Tex. App. – Houston 2003, no writ) (citation omitted).  In *Ventura*, the contract stated, "I . . . want to certify you [sic] that I, personally, guaranty all outstandings [sic] and liabilities of Sacos Tubulares with Material Partnerships as well as future shipments," signed "JORGE LOPEZ VENTURA, GENERAL MANAGER."  *Id.* at 256.  The court found that the contract clearly intended to bind Ventura as an individual, despite the corporate designation accompanying his signature.  *Id.*

The Fifth Circuit has applied the *American Petrofina* rule.  In *Instone Travel Tech. Marine & Offshore v. Int'l Shipping Partners*, 334 F.3d 423, a corporation providing passenger-ship management services for vessel owners contracted to purchase airline tickets from the plaintiff but did not pay for the tickets.  The purchaser asserted that it had no

liability for the tickets' cost because it signed the contract in its capacity as a third party's agent.  The court held that under Texas law, the contract imposed liability on the purchaser to pay for the tickets purchased.  That obligation was not overcome by the statement in the contract that the signing party was an agent.  "[S]tatus as an agent, alone, is insufficient to override the indicia of liability that pervade the Agreement."  *Instone*, 334 F.3d at 430–31.

The Waiver, Loan Agreement, and the Continuing Guaranty clearly defeat Horridge's argument that he "was plainly signing the agreement in his capacity as president of B&C Flight Management, Inc."  (Docket Entry No. 120 at 2).  Horridge signed the Continuing Guaranty and the Loan Agreement twice as a guarantor, once individually and once as president on behalf of the second guarantor, B & C Flight Management, Inc.  Horridge signed the Waiver in a consistent fashion.  He signed three times on behalf of a disclosed corporate principal, as the president of that entity:  once on behalf of  the "BORROWER," B & C FLIGHT MANAGEMENT, INC., as its president; once on behalf of a "GUARANTOR," B & C FLIGHT MANAGEMENT, INC., as its president; and a third time on behalf of the "PLEDGOR," B & C FLIGHT MANAGEMENT, INC., as its president.  These signatures are clearly "by" Horridge as an officer acting on behalf of the disclosed corporate principal.  Horridge also signed his name as an individual "GUARANTOR," without any language stating that a corporate principal was signing "By" Horridge.  The absence of any reference to a corporate principal and the fact that Horridge as an individual was a guarantor in addition to B & C Flight Management  make it clear that he was signing the Waiver in his individual capacity as a well as his representative capacity.  The fact that the word "president" appears

after Horridge's name does not show that he was signing only in a representative as opposed to an individual capacity. *Material P'ships., Inc. v. Ventura*, 102 S.W.3d at 259.

Holding that Horridge signed the Waiver as an individual guarantor as well as in his representative capacity on behalf of B & C Flight Management, Inc. is consistent with the clear intent of the Continuing Guaranty, the Loan Agreement, and the Waiver. To hold that Horridge could only be bound in a representative capacity would make the guaranty expressed in the Guaranty, the Loan Agreement, and the Waiver meaningless because it would create only one guarantor – B & C Flight Management, Inc. – which would be the same entity as the borrower and the pledgor. The parties clearly intended to have both an individual and a corporate guarantor – Horridge individually and B & C Flight Management – and to have the Waiver of Jury Trial extend to all the parties to the "extension of credit," including "any" guarantors. (Docket Entry No. 113, Ex. A at 1). To hold that the guarantor could only be bound to the Waiver in a representative capacity would ignore the fact that there was both an individual and a corporate guarantor and that both were intended to be bound by the Waiver. This court concludes that Horridge signed the Waiver in his individual capacity.

## B. Did Horridge Knowingly, Voluntarily, and Intelligently Waive his Jury Trial Right?

Whitney has met its burden of showing that Horridge knowingly, voluntarily, and intelligently waived his right to a jury trial, and Horridge has not disputed this showing. The record reveals that there was no substantial disparity in bargaining power. Whitney submitted excerpts from Horridge's deposition. Horridge's testimony reveals that he is a sophisticated

and experienced businessman.  In his deposition, Horridge described significant relevant past experience in banking (he owned banks) and in borrowing (he had been involved in large prior loans).  (Docket Entry No. 113, Ex. B at 58–65, 198–209).  Horridge had an opportunity to, and did, negotiate the loan terms with Whitney.  In his deposition, Horridge described why he sought the loans at issue and his role in negotiating with Whitney.  (*Id*. at 208–214).

The Waiver is clearly conspicuous.  The "WAIVER OF RIGHT TO JURY TRIAL" is a separate document.  It contains two paragraphs, the first defining the parties and the second setting out the waiver terms in bolded capital letters.  (Docket Entry No. 113, Ex. A at 1).  After those two paragraphs, the document contains a date and the signatures.  (*Id*. at 1–2).

The relevant factors all support a finding that Horridge signed the Waiver knowingly, voluntarily, and intelligently.  The Waiver is enforceable.

### C.    Did Whitney Waive Its Right to Enforce the Waiver?

Horridge argues that Whitney waived its right to enforce the contractual waiver of the right to a jury trial by delaying filing the motion.  "Under Texas law, a waiver occurs when a party intentionally relinquishes a known right or intentionally engages in conduct that is inconsistent with claiming a known right." *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 300 (5th Cir. 2005) (citing *Emscor Mfg., Inc. v. Alliance, Ins. Group*, 879 S.W.2d 894, 917 (Tex.App.-Houston [14th Dist.] )).  "The words or the conduct of the parties must 'unequivocally manifest' the parties' intent to no longer assert the right." *Id.* (citing

14

*Enterprise-Laredo Assoc. v. Hachar's Inc.*, 839 S.W.2d 822, 835 (Tex.App.-San Antonio 1992, writ denied)).

Whitney did not demand a jury.  Horridge's answer to the original complaint did not include a jury demand.   (Docket Entry No. 16).  On December 27, 2005, Horridge filed a motion to file an amended pleading, which was not opposed.  (Docket Entry No. 61).  On January 4, 2006, Horridge filed an agreed motion to amend his pleadings, which was granted. (Docket Entry Nos. 62, 63).  On January 6, 2006, Horridge filed an amended answer and counterclaims and included a demand for a jury trial.  (Docket Entry No. 65).  Whitney answered the counterclaims on March 9, 2006 without mentioning the jury trial demand. (Docket Entry No. 73).  Whitney filed amended claims and added another defendant on May 1, 2006.  (Docket Entry No. 88).  Horridge answered the amended complaint and again demanded a jury trial on May 18, 2006.  (Docket Entry No. 91).  Whitney filed this motion to enforce the waiver of jury trial on October 31, 2006.  (Docket Entry No. 113).  The case is set for docket call in February 2007.

Horridge claims that Whitney "knew of Mr. Horridge's request for a jury trial on December 27, 2005, and did nothing to oppose it–even agreed not to oppose its filing–until October 31, 2006."  (Docket Entry No. 120 at 3).  The fact that Whitney did not oppose Horridge filing an amended answer and counterclaim does not equate to Whitney's agreeing to a jury trial.  There is no evidence in the record that Whitney agreed to a jury.

Horridge cites two cases to support his argument that by delaying in seeking to enforce the contractual jury waiver, Whitney waived it.  In *Rivercenter Associates v. Rivera*, 858

15

S.W.2d 366 (Tex. 1993), a suit to recover rent from a lessee, the Texas Supreme Court denied a plaintiff's request for mandamus after the lower court refused to enforce a contractual jury waiver.  The plaintiff had not only delayed in seeking to enforce the waiver but had also had the case set for trial on the court's jury docket.  In this case, by contrast, there is no specific "jury docket."  Whitney did not take any steps similar to placing a case on a jury docket inconsistent with enforcing the jury trial waiver.  In the second case, *RDO Financial*, 191 F. Supp. 2d at 814,  the party attempting to enforce the jury waiver had stipulated to a jury trial. The court found this behavior "inconsistent[] with the enforcement of the jury waiver provision."  *Id.*  Even with the previous stipulation to a jury trial, the court analyzed the contractual jury trial waiver, and it was not knowing and voluntary.  *Id.* at 812–14.  Neither case supports Horridge's argument that Whitney waived its right to enforce the contractual jury trial waiver.

In this case, Whitney has not stipulated to a jury trial or taken action inconsistent with enforcing the waiver or that unequivocally manifests a waiver of its right to enforce the contract. *RSR Corp.*, 426 F.3d at 300.  Whitney submitted a joint scheduling order with Horridge in February 2006; that order does not mention a jury.  (Docket Entry No. 72). Whitney did not object to a scheduling order filed by the newly added defendant, Jacorro, in July 2006, which does demand a jury.  (Docket Entry Nos. 101, 102).  However, Whitney has agreed that Jacorro is entitled to a jury on all claims against her.  (Docket Entry No. 121 at 8).  Whitney has not waived its contractual right to proceed without a jury.

**IV.    Conclusion**

16

Whitney's motion to enforce the waiver of jury trial is granted.  (Docket Entry No. 113).  Whitney does not dispute that Jacorro has a right to a jury trial as to the claims against her, (Docket Entry No. 121 at 8), but her right to a jury trial does not defeat the enforceability of Horridge's contractual waiver.  This court can preserve Jacorro's right to a jury trial as well as enforce Horridge's contractual waiver through appropriate case-management techniques.

SIGNED on December 15, 2006, at Houston, Texas.

Lee H. Rosenthal
United States District Judge