## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| WHITNEY NATIONAL BANK, | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-04-2220 |
| | § | |
| | § | |
| AIR AMBULANCE BY B&C FLIGHT | § | |
| MANAGEMENT, INC. *et al.* | § | |

### MEMORANDUM AND OPINION

In 2004, Whitney National Bank sued a borrower, Air Ambulance by B & C Flight Management, Inc., and its president and principal owner, Roy Horridge, who also guaranteed the loan. Whitney alleged breaches of the loan contract, the guaranty, and  as well as related contractual obligations.  Whitney also alleged that Horridge had committed fraud in inducing Whitney into making the loans.

In May 2006, Whitney filed an amended complaint adding Jillie Jacorro, Horridge's former wife, as a defendant.  Whitney alleged that in June 2004, the day after this suit was filed, Horridge and Jacorro filed for a "sham" divorce "solely for the purpose of fraudulently conveying Horridge's assets to shield them from Whitney."  (Docket Entry No. 88, pp. 7-8). Whitney alleged that by these transfers, Horridge and Jacorro "intended to hinder, delay, and defraud Plaintiff as a creditor of Horridge."   Whitney asserted only one cause of action against Jacorro, under the Texas Uniform Fraudulent Transfer Act, Tex. Bus. & Comm. Code § 24.006(a)(1) & (2) and § 24.006.  As relief, Whitney sought to "obtain a judgment avoiding

the fraudulent transfers and conveyances in question," to "recover judgment against Horridge and Jillie Horridge for the value of the assets fraudulently transferred," and to "recover judgment against Horridge and Jillie Horridge for exemplary damages." (*Id.*, p. 11).

Jacorro has moved to dismiss the claim against her for lack of subject-matter jurisdiction, based on the domestic relations exception to federal diversity jurisdiction. Alternatively, Jacorro asks this court to abstain from deciding the fraudulent transfer claim. (Docket Entry No. 118). Whitney has responded, (Docket Entry No. 125), and Jacorro has replied, (Docket Entry No. 126). Based on a careful review of the pleadings, the motion, response, and reply, the parties' submissions, and the applicable law, this court denies the motion to dismiss Whitney's claim for damages resulting from the alleged fraudulent transfers. The reasons are explained below.

## I.     Factual Background

Jacorro was married to Roy Horridge for 27 years. Beginning in 2002, Horridge negotiated and obtained loans from Whitney for B & C Flight Management and executed promissory notes. In 2004, B & C Flight Management executed a $5.6 million note that renewed, extended, and increased the earlier notes. Horridge and B & C Flight Management also executed related documents, including a Continuing Guaranty signed by Horridge individually as well as on behalf of the corporation. Whitney alleges that Horridge represented that B & C Flight Management would use the funds obtained through the May 2004 extension, renewal, and additional $1 million loan amount to purchase a competing business and to acquire its FAA operating certificate, as well as other assets. Whitney

2

alleges that Horridge also made other representations as to its operations and status that were false.  Whitney filed suit against B & C Flight Management in June 2004.  Whitney alleges that shortly after it loaned the additional $1 million to B & C Flight Management in May 2004, it learned that Horridge did not use the money for the purpose he had represented to Whitney; that the aircraft securing the loans were not in compliance with FAA requirements and could not be flown; and that B & C Flight Management had stopped flying for business purposes.  Whitney alleges that before the loan was made, Horridge knew that the FAA was investigating B & C Flight Management and the condition of the aircraft.  Whitney also alleges that Horridge falsified the personal financial statements that he provided to obtain the loans.  On June 2, 2004, Whitney notified B & C Flight Management that the loans were in default and that the Note had been accelerated.  On June 6, 2004, Whitney filed this lawsuit. In the complaint, Whitney alleged that the Horridge and his companies breached their obligations under the Note, the Aircraft Security Agreements, the Loan Agreement, and the Guaranty, and committed fraud.

In the amended complaint filed in May 2006 against Horridge, B & C Flight Management, and Jacorro, Whitney alleges that on June 7, 2004, the day after Whitney filed this suit, Horridge and Jacorro filed for divorce.  Whitney alleges that "the divorce was a sham and was done solely for the purpose of fraudulently conveying assets to shield them from Whitney Bank with the intent of hindering, delaying and defrauding Whitney." (Docket Entry No. 88 at 7–8).  Whitney alleges that Horridge and Jacorro continued to live together. The Agreed Divorce Decree was entered on August 9, 2004.  Whitney alleges that during the

pendency of the divorce proceeding, Horridge and Jacorrro sold real property and arranged that the proceeds would go only to Jacorro.  Whitney also alleges that Horridge and Jacorro transferred cash from joint accounts to Jacorro and then had those accounts declared Jacorro's separate property in the divorce decree.  Whitney alleges that these transfers  and sold assets to give equity to Jacorro and fraudulently transferred cash into an account declared Jacorro's assets in the divorce.  Whitney asserts one cause of action against Jacorro, fraudulent transfer under § 24.005(a)(1)–(2) and § 24.006 of the Texas Business & Commerce Code.  (Docket Entry No. 88 at 10).

## II.     The Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject matter jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir.1998) (*quoting Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir.1996)).  "Courts may dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Clark v. Tarrant County,* 798 F.2d 736, 741 (5th Cir.1986) (*citing Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981)).  The plaintiff bears the burden of demonstrating that subject matter jurisdiction exists.  *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir.1981).

## III.     Analysis

4

Jacorro argues that this court's diversity jurisdiction over this case does not extend to the fraudulent transfer claim against her. Jacorro invokes the domestic relations exception to federal diversity jurisdiction. Whitney responds that it does "not seek this court to modify or set aside [the divorce] decree," to "undo the property division" included in the divorce decree, or otherwise collaterally attack that order. Instead, Whitney asserts that it is pursuing a "tort claim for damages against Horridge and Jacorro." (Docket Entry No. 125, p. 3). Whitney argues that the domestic relations exception is narrow and does not apply here.

The Supreme Court addressed the domestic relations exception to federal diversity jurisdiction in *Ankenbrandt v. Richards*, 504 U.S. 689, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). The Court held that the exception "encompasses only cases involving the issuance of a divorce, alimony, or child custody decree. . . ." *Id*. at 703; *see also Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 386, at n.2 (5th Cir. 2001) ("The exception is a narrow one, generally only prohibiting federal courts from issuing divorce, alimony, or child custody decrees."). The Supreme Court construed the domestic relations exception narrowly, as divesting federal courts of the power "to issue divorce, alimony, and child custody decrees." *Ankenbrandt*, 504 U.S. at 703; *see also Cole v. Cole*, 633 F.2d 1083, 1087 (4th Cir.1980) ("[T]he district courts have no original diversity jurisdiction to grant a divorce, to award alimony, to determine child custody, or to decree visitation."). In emphasizing the limited scope of this long-established exception to diversity jurisdiction, the Supreme Court reasoned that it "makes far more sense to retain the rule that federal courts lack power to issue these types of decrees because of the special proficiency developed by state tribunals over the past

5

century and a half in handling issues that arise in the granting of such decrees." *Ankenbrandt*, 504 U.S. at 703-04.

The Supreme Court first recognized the domestic relations exception in *Barber v. Barber*, 62 U.S. 582 (1858).  Even then, the exception was construed narrowly, as *Ankenbrandt* recognized:

> *Barber* itself disclaimed federal jurisdiction over a narrow range of domestic relations issues involving the granting of a divorce and a decree of alimony . . .The *Barber* Court thus did not intend to strip the federal courts of authority to hear cases arising from the domestic relations of persons unless they seek the granting or modification of a divorce or alimony decree. The holding of the case itself sanctioned the exercise of federal jurisdiction over the enforcement of an alimony decree that had been properly obtained in a state court of competent jurisdiction.

*Ankenbrandt,* 504 U.S. at 701-02.

The jurisdictional determination underlying the domestic relations exception must be based on the nature of the claim at issue, not merely the relationship between the parties or the fact that the property at issue was the subject of a divorce decree.  In *Cole,* cited by the Supreme Court in *Ankenbrandt* as one of the "better reasoned views" in this area, the Fourth Circuit stated the following:

> [W]here alleged breaches (whether tortious or contractual in nature) are of a duty which does not arise solely from family relations law, a federal district court may not deny jurisdiction simply on the grounds of the supposed etiology of the emotions underlying either the alleged breach by the defendant or the decision by the plaintiff to bring suit.

*Cole*, 633 F.2d at 1088.  The court recognized in *Cole* that after a state court has articulated the rights of the parties in a divorce decree or otherwise, federal courts in diversity cases

often must rule on the validity of the prior state action or must determine the existence of a breach of the duties established in that action.  *See Cole*, 633 F.2d at 1087 ("Once some other court has articulated such [divorce, alimony, custody or visitation] rights, however, federal courts have often been called on under diversity jurisdiction to rule on the validity of the prior state or foreign judicial action or to determine the existence vel non of a breach of the duties established in that action, especially where the duties are no longer subject to modification.") (citations omitted).   Indeed, the Supreme Court found *Cole* persuasive because it, like *Ankenbrandt*, "similarly stated the domestic relations exception as narrowly confined to suits for divorce, alimony, or child custody decrees."  *Ankenbrandt*, 504 U.S. at 703 n.6.

The Fifth Circuit cases similarly emphasize that the application of the domestic relations exception and related abstention issues "should not be resolved by resort to 'technical appellation,' but rather by inquiry into 'whether hearing the claim will necessitate the court's involvement in domestic issues.'"  *Rogers v. Jansen*, 891 F.2d 95, 98 (5th Cir. 1989) (citing *Jagiella v. Jagiella*, 647 F.2d 561 (5th Cir. Unit B 1981)); *see also Congleton v. Holy Cross Child Placement Agency*, 919 F.2d 1077, 1077 (5th Cir. 1990) ("We will not succumb to formalism in this species of abstention, nor permit the policies underlying it to be thwarted by procedural or legal pretense.").   In *Congleton*, the Fifth Circuit applied the exception, finding that a dispute over an adoption contract was "of necessity so intertwined with parental rights and the custodial status of the child that it cannot fairly be separated." *Congleton*, 919 F.2d 1077.

Jacorro asks this court to apply the domestic relations exception to diversity jurisdiction to this case because in the amended complaint, Whitney alleges that the divorce decree between Horridge and Jacorro was a "sham" obtained to transfer assets to prevent Horridge's creditor, Whitney, from pursuing them.  Jacorro also emphasizes that Whitney alleges that it seeks to "avoid" the fraudulent transfers and conveyances.  Whitney responds by emphasizing that it is not seeking to change any of the terms of the divorce decree; does not seek an order avoiding the transfers or conveyances, but is only seeking tort damages for the alleged fraudulent transfers or conveyances.

The record is clear that Whitney is not attempting to modify or set aside the divorce decree.  Whitney's characterization of the divorce as a "sham" is not accompanied by any request that this court declare that the divorce decree is invalid or to set it aside.  Whitney is alleging fraudulent transfer under Texas law.  A fraudulent transfer is a transfer by a debtor with the intent to hinder, delay, or defraud his creditors by placing the debtor's property beyond the creditor's reach.  *Nobles v. Marcus*, 533 S.W.2d 923, 925 (Tex.1976); *Coleman Cattle Co., Inc. v. Carpentier*, 10 S.W.3d 430, 433 (Tex.App.-Beaumont 2000, no pet.).  Whitney is suing under the Texas Uniform Fraudulent Transfer Act, (TUFTA), Tex. Bus. & Com. Code Ann. § 24.005(a)(1) and (2) (Vernon 2005),  which provide:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

    (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

    (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

TEX. BUS. & COM. CODE ANN. § 24.005(b) (Vernon 2005).

The fraudulent transfer claim is not part of an ongoing series of disputes about the marital relationship. Nor is the third-party tort so intertwined with the validity of the divorce decree that it cannot be separated. The fact that the challenged transfers may have been included in a divorce decree does not preclude federal subject-matter jurisdiction over the claim that as to a third-party creditor, the transfers were fraudulent. When the focus is on the nature of the asserted claims, as required, it is clear that such claims are based not on the defendants' former marital status, but instead on Whitney's interests under Texas law as a creditor, Horridge's status under Texas law as a debtor, and Jacorro's status as a transferee. Whitney's claims do not trigger application of the domestic relations exception because they are based on Texas fraudulent conveyance law and do not seek issuance or modification of a divorce or alimony decree. The fact that Horridge and Jacorro allegedly used a state-issued divorce decree to effect the challenged conveyances does not remove this case from federal diversity jurisdiction; it is not the origin of the parties' interests and duties that matters for jurisdictional purposes but the nature of the claims. Whitney's claims are based on the Texas Uniform Fraudulent Transfer Act and do not seek the issuance or modification of a divorce

or alimony decree, a determination of entitlement to custody, or any other adjustment of family status.

Jacorro cites an unpublished district court case, *Bank of Beaver City v. Branham*, 2006 WL 1469300 (E.D. Tenn. May 24, 2006). In *Branham*, a bank filed an diversity action attempting to enforce a judgment lien against a debtor. The bank contended that much of the debtor's marital property was transferred to his former spouse in a divorce to avoid execution. The court held that the bank's claims were within the domestic relations exception to federal jurisdiction. Not only is this case not binding on this court, it is readily distinguishable. In *Beaver City*, there were two state court proceedings pending, one in the divorce court and one in the probate court. In the present case, by contrast, there is no pending state-court case; the divorce is long since final, although the state court possesses continuing jurisdiction for enforcement purposes. In *Beaver City*, the bank was seeking relief beyond what Whitney seeks in this case, including enforcement of the bank's judgment lien; an order requiring the sale of the property to satisfy the lien; a writ of attachment on the property; and an injunction restraining the defendants from selling or otherwise disposing of the property. The court in *Beaver City* emphasized that the bank was seeking to set aside the divorce decree in a to set aside transfers in the divorce "are seeking a modification of the . . . divorce decree, something that is squarely within the domestic relations exception." *Id.* at *6.

To the extent the bank's claims and requests for relief in *Beaver City* went beyond the fraudulent conveyance claim and request for damages that Whitney asserts in this case,

*Beaver City* is distinguishable.  Whitney has made it clear that it only seeks damages for the alleged fraudulent transfers.  To the extent that the court in *Beaver City* held that the domestic relations exception applied because the bank was challenging property conveyances that were included in a divorce decree, the holding is an overbroad application of the exception.

The motion to dismiss based on the domestic relations exception to federal jurisdiction is denied.  To hold otherwise would expand the narrow domestic relations exception beyond its proper scope.

Jacorro also invokes abstention.  There is no pending state court suit that would justify *Younger* abstention.  *Younger v. Harris*, 401 U.S. 37 (1971).  Nor are any of the factors that justify *Burford* abstention present.  *Burford v. Sun Oil Co.* 319 U.S. 315 (1943).  As the Court pointed out in *Ankenbrandt*, *Burford* abstention might apply when a federal suit was filed before a divorce decree and the suit depended on a determination of the parties status. "Where, as here, the status of the domestic relationship has been determined as a matter of state law, and in any event has no bearing on the underlying torts alleged, . . . *Burford* abstention is inappropriate."  12 S.Ct. at 2216.  The motion to dismiss on the basis of abstention is also denied.

**IV.    Conclusion**

Jacorro's motion to dismiss Whitney's claim for damages for fraudulent transfer is

denied.  (Docket Entry No. 118).

SIGNED on December 19, 2006, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge